**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

FILED
MAR - 8 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**MORTEGA, BENICIO AGUILAR
27-C 17ᵀᴴ AVENUE, MURPHY
QUEZON CITY, PHILIPPINES 1109
Tel. No. (0632) 440-1037**

CASE NUMBER 1:06CV00426
JUDGE: Emmet G. Sullivan
DECK TYPE: Administrative Agency Rev.
DATE STAMP: 03/08/2006

V

**DEPARTMENT OF DEFENSE, SECRETARY,
PENTAGON, WASHINGTON, D.C.**

## COMPLAINT

I, Mortega, Benicio A., Ex-Navy SS# 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, hereby prays for an order directing the Secretary, Department of Defense, thru this petition for extraordinary relief in the nature of habeas corpus ad subjiciendum and claim for damages to:

1. Vacate the Judgment; dismiss the charges of the special court-martial of 13 April 1976;

2. Assume my remaining actual naval service to a period of twenty eight (28) years as honorable active duty and presume all promotions as regular to the highest rank of an enlisted man;

3. Indemnify me and my family for twenty eight (28) years of suffering with compensatory and punitive damages in the amount of:

    A. For compensatory damages – United States One Million Dollars (U.S. $1,000,000.00);

RECEIVED
DEC 29 2005
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

1

B. For punitive damages – United States One Billion Dollars (U.S. $1,000,000,000.00);

C. Compensatory Damages in addition to punitive damages total to – United States One Billion One Million Dollars (U.S. $1,001,000,000.00);

4. Grant me a United States of America Citizenship.

## I. HISTORY OF THE CASE

1. 13 April 1976 – Special Court-Martial
2. 1976 – Review, Navy Court of Military Review
3. 1976 – Review, Navy Court of Military Appeals
4. 09 March 977 – Separation from service with Bad Conduct Discharge
5. 1980 – Review, Board for Correction of Naval Records
6. 1999 – Review, Board for Correction of Naval Records
7. 2000 – Learned about the violations of my Constitutional Rights
8. 2001 – Review, Board for Correction of Naval Records
9. 16 October 2002 – Applied for compensation and pension at United States Veterans Administration (U.S.V.A.) Regional Office, Manila
10. May 2003 – Disability Pension Benefits denied by U.S.V.A. Regional Office, Manila
11. April 2005 – Review, Board for Correction of Naval Records

## II. STATEMENT OF FACTS

1. That on 20 February 1976, I reported back to the United States Naval Station Subic Bay, Philippines after about three (3) months of unauthorized absence;

2. That the Armed Forces Base Police handcuffed me, drove me in a prisoner's closed van and thrown m directly in an isolated detention cell for more or less twelve (12) hours at United States Navy Receiving Station, Subic Bay, Philippines and detained me at barracks 305 of the same area for more or less than thirty (30) days;

3. That as I requested for a Captain's Mast only and that I be shipped back to my ship, USS Manley (DD940), deployed at Philadelphia, Pennsylvania they referred me instead to a Special Court-Martial that was held on 13 April 1976;

4. That prior to the trial, the Navy appointed Counsel Ex-Lieutenant Charles Jeffries coerced me to sign a Plea Bargaining Agreement, with a promise of no discharge from the Navy;

5. That with my objections, the Military Judge, Ex-Commander Jeannie Van Slate sentenced me to be discharged from the service with a Bad Conduct Discharge;

6. That I was sentenced without even any knowledge of my rights as an accused;

7. Nether was I served the Bill of Particulars;

8. That instead of assisting me to an appeal to the higher courts, Lieutenant Jeffries insisted that the sentence adjudged is just but temporary and that the Navy would just erase it and I could continue my Navy career even for life;

9. In the course of my stay at United States Navy Receiving Station, Subic Bay, Philippines while awaiting appeal, I learned that it was the commanding officer of United States Naval Station, Subic Bay Captain A. S. Moreau, who ordered my confinement at United States Navy Receiving Station while awaiting trial, and thus unlawfully influencing the convening of the Special Court-Martial;

10. That the spectators at the Court-Martial were surprised as I heard them comment about the harshness of the Bad Conduct Discharge for an offense of three (3) months unauthorized absence;

11. That said Court-Martial was secured at around six thirty (6:30) in the evening on 13 April 1976; that when I checked the mess hall to eat my dinner after the Court-Martial proceedings because I was so very tense and hungry, it was already close at that time.

### III. STATEMENT OF ISSUE

1. Upon reporting back to duty, is it lawful for the Armed Forces Base Police to handcuff, transport in a prisoner's closed van and detain me in an isolated detention cell for more or less twelve (12) hours and detained me for more or less than thirty (30) days without any formal charges?

2. Is it lawful for a Court-Appointed Attorney to force an accused to sign a Plea Bargaining Agreement?

3. Is it proper for the court not to serve the accused any Bill of Particulars? And not to advise the accused of any of his rights?

4. Is it proper for the trial judge not to inquire on matters regarding a guilty plea?

5. As a rule of the Court-Martial, is it important that the accused be given a copy of the trial proceedings?

6. Is it proper that the defense counsel not to assist and represent the accused at further appellate courts?

7. Is it lawful for a base commander to influence the convening of a Special Court-Martial?

8. Is it lawful for a Special Court-Martial to convene even after working hours?

9. How much time is allowed by law for the defense to prepare for trial that would not constitute an error?

10. In a Plea Bargaining Agreement, is a promise of "No Punitive Discharge" by counsel be emphasized? If yes, should the promise be kept?

## IV. JURISDICTIONAL STATEMENT

That since I was only a Filipino citizen, had no materials and no access to any American laws, I am respectfully appealing to your honorable court for the injustice as regards to the violations of my constitutional rights by:

  a. United States Naval Station, Subic Bay Commander, Captain A. S. Moreau;

  b. Special Court-Martial Trial Judge Commander Jeannie Van Slate;

  c. Trial Defense Counsel Lieutenant Charles Jeffries; that resulted to a sentence of a bad conduct discharge from the United States Navy.

## V. REASONS FOR GRANTING THE WRIT

1. That prior to the trial, I was handcuffed, transported in a prisoner's closed van and thrown into an isolation cell like a convicted criminal;

2. That with the promise of no bad conduct discharge, I was coerced to sign a Plea Bargaining Agreement;

3. That my appointed Defense Counsel was incompetent to assist and represent me as an accused as a result of coercion;

4. That the base commander, Captain A. S. Moreau gives real hard-time to Filipino sailors as compared to fellow white American shipmates who were convicted of graver offenses but with no punitive discharges as sentence;

5. That the bad conduct discharge sentenced developed in me some insecurities, as I would be losing my precious job and worst of all, my character and well-being as a person thus suffering from mental anguish and emotional stress as well;

6. That due to these, my reputation, my life and my career was utterly destroyed for it was my dream and I was determined to make a career out of the Navy;

7. That since my discharge, I was always irritable having been placed in a situation where I constantly had quarrels with my wife about our situation as a bad conduct discharge personnel without a promising career to look forward to ever since;

8. That the bad conduct discharge totally ruined my personal image and credibility and above all, my dignity;

9. That people who knew regarded me as an ex-convict from the United States Navy, considering the Special Court-Martial convention and the sentence adjudged;

10. That through all these years, I had kept all these hurts, and on sleepless nights, had to reminisce the good times in the Navy, and remember the injustice only to be considered and partly accepted as it was, and hoping that someday, justice would be given to me as I honestly believe that the United States of America is one of the major advocate and protector of human rights.

## VI. THE RELIEF SOUGHT

1. That for twenty eight (28) years of suffering from mental anguish and emotional stress due to the Bad Conduct Discharge, I am respectfully praying for the honorable court to order the Secretary, Department of Defense to:

a. Vacate the Judgment; dismiss the charges of the special court-martial of 13 April 1976;

b. Assume my remaining actual naval service to a period of twenty eight (28) years as honorable active duty and presume all promotions as regular to the highest rank of an enlisted man;

c. Indemnify me and my family for twenty eight (28) years of suffering with compensatory and punitive damages in the amount of:

   1. For compensatory damages – United States One Million Dollars (U.S. $1,000,000.00);

   2. For punitive damages – United States One Billion Dollars (U.S. $1,000,000,000.00);

   3. Compensatory Damages in addition to punitive damages total to – United States One Billion One Million Dollars (U.S. $1,001,000,000.00);

d. Grant me a United States of America Citizenship.

BENICIO A. MORTEGA
27-C 17th Avenue, Murphy
Quezon City, Philippines 1109

ADDENDUM:

II. STATEMENT OF FACTS

1. That in the Julian calendar April of 1976, the then Lieutenant Charles Jeffries addressed himself as USNR in all official Navy correspondences. If USNR means United States Naval Reserve, then he was on a reserve status during the Special Court-Martial proceedings. As a matter of fact, he introduced himself and even emphasized to me that he is a regular navy lawyer, before committing himself to my case;

2. That on or about April of 1976, the then lieutenant Charles Jeffries told me right after the honorable judge Commander Jeannie Van Slate gave me the sentence of bad conduct discharge, that.... "BCD will not affect you on your civilian status and still can gain employment because of your citizenship". He said that so I won't react adversely on the sentence. But one thing he never considered. The lasting psychological effect the bad conduct discharge can give on the affected person regardless of citizenship;

3. That I joined the United States Navy as a Filipino citizen under the Republic of the Philippines – United States of America Bases Agreement;

4. That I reported back and turned myself in voluntary but I was detained, charged and sentenced under the Uniform Code of Military Justice inside Philippine soil;

5. That I was not allowed by the Special Court-Martial to avail my right to an effective assistance of counsel of my choice;

6. Violation of the 14th Amendment of the Constitution (Guarantee of a Constitutional Due Process).

   a. That I complied with the Department Rule to exhaust all administrative remedies; (I raised these constitutional rights violations to the Board for correction of Naval Records).

   b. That in their decision dated 06 March 2001, with docket number 2893-82, W. Dean Pfeiffer rejected my petition without even presenting it to the Board (as shown in evidence "A").

   c. That due to the Board's decision, I am now thoroughly overwhelmed by mental and emotional anguish as my only remedy now was junked.

ADDENDUM:

III. STATEMENT OF ISSUE

1. Is it allowed by law for a Special Court-Martial convention to appoint a navy lawyer in a reserve status and not an active military lawyer to defend an accused?

2. Violation of my universal human right as a Filipino citizen that involves my constitutional rights to a due process;

   As a citizen of the Republic of the Philippines, is it lawful for the United States Navy not to allow me to avail of my fundamental right to a due process as a Filipino citizen through an access to a Filipino lawyer of my choice, and even to be tried in Philippine courts since the incident happened while serving in a United States Naval Base inside Philippine Jurisdiction?

Republic of the Philippines }
Quezon City, Metro Manila  } s.s.

# ACKNOWLEDGEMENT

BEFORE ME, a Notary Public for and in the City of Quezon, Metro Manila, Philippines, personally appeared BENICIO A. MORTEGA on October 12, 2005.

Known to me and to me known to be the same person who executed the foregoing Petition for Extrajudicial Relief and he acknowledged to me that the same is his free and voluntary act and deed.

WITNESS MY HAND AND SEAL on the date and at the place first above written.

ROLANDO V. MONSAVAC
NOTARY PUBLIC
UNTIL DECEMBER 31, 2005
PTR NUMER A-6025702
ISSUED JANUARY 4, 2005
AT QUEZON CITY

Doc. No.: 186
Page No.: 37
Book No.: XXIV
Series of 2005