UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BENICIO AGUILAR MORTEGA,          :
                                  :
            Plaintiff,            :
      v.                          :   Civil Action No. 06-0426 (EGS)
                                  :
DEPARTMENT OF DEFENSE.,           :
                                  :
            Defendant.            :

## MEMORANDUM OPINION

This matter is before the Court on defendant's motion to dismiss or, in the alternative, for summary judgment. Having considered defendant's motion, plaintiff's opposition, and the record of this case, the Court will grant summary judgment for defendant.

### I.   BACKGROUND

*A.  Bad Conduct Discharge*

Plaintiff, a citizen of the Philippines, enlisted in the United States Navy in 1974. *See* Complaint ("Compl.") at 1, 4, 9 (page numbers designated by the Court); A.R. 5 (Findings of Fact).[1] On February 20, 1976, plaintiff "reported back to the United States Naval Station Subic Bay, Philippines after about three (3) months of unauthorized absence." Compl. at 2. He was charged with a violation of Article 86 of the Uniform Code of Military Justice ("UCMJ"),[2] and the corresponding specification read as follows:

---

[1]   The Court refers to the Administrative Record as "A.R."

[2]   A court-martial shall punish a member of the armed forces who, without authority, either fails to report to his appointed place of duty at the prescribed time, or leaves that place, or "absents himself or remains absent from his unit, organization, or place of duty at which he is required to be at the time prescribed." 10 U.S.C. § 886.

1

> In that Seaman Recruit Benicio Aguilar MORTEGA, United States
> Navy, U.S. Naval Station, Subic Bay, Philippines, former attached
> to USS MANLEY (DD 940), did, on or about 0730, 01 December
> 1975, without authority, absent himself from his unit, to wit: USS MANLEY (DD 940), then located at U.S. Naval Station,
> Philadelphia, Pennsylvania, and did remain so absent until on or about 1530, 20 February 1976.

C.M. 62 (Charge Sheet).[3]

A special court martial convened on April 13, 1976 at which plaintiff was represented by appointed military counsel. C.M. 51, 57-58. The presiding military judge granted plaintiff's request that he be tried before a military judge alone. C.M. 59-60. Plaintiff entered a guilty plea to the charge and specification, and was sentenced to a bad conduct discharge. C.M. 69-73, 83. The Convening Authority approved the sentence on May 4, 1976. C.M. 15. The United States Navy Court of Military Review affirmed the sentence on July 7, 1976, and on November 8, 1976, the Court of Military Appeals denied plaintiff's petition to consider his case. C.M. 13. The discharge became effective on March 9, 1977. *See* A.R. 1.

### B. Applications for Correction of Naval Records

In May 1982, plaintiff submitted an application to the Board for Correction of Naval Records ("BCNR"). A.R. 14-15. He stated that the "adverse and inimical report of the [Navy] appears erroneous and totally absurd as against Equity and Good Conscience and therefore completely without justification." A.R. 14. Plaintiff specifically asserted that his discharge "should be recharacterized to General Discharge (Under Honorable [C]onditions). A.R. 15. The BCNR found that "the facts and circumstances of [plaintiff's] case fail to show that a material error or injustice has been suffered." A.R. 1. The application was denied on July 30, 1982. A.R. 1-2.

---

[3] The Court refers to the Record of Trial by Special Court-Martial as "C.M."

In April 1997, plaintiff again sought correction of his record to reflect an honorable discharge. A.R. 20-21. On June 27, 1997, the BCNR deemed reconsideration inappropriate, concluding that even the new material plaintiff submitted would not lead to a different outcome. A.R. 18.

In plaintiff's February 2001 application, he challenged the special court-martial's jurisdiction, claimed that he signed the plea agreement without full knowledge of its contents and consequences, and alleged the ineffective assistance of appointed counsel. A.R. 28-29. On these bases, plaintiff again sought "an upgrading of [his] discharge to honorable" and payment of back wages as if he had been "an ordinary enlisted man" in the interim. A.R. 29. He explained that he had suffered mental anguish, psychological depression, emotional distress and financial hardship because of the bad conduct discharge. A.R. 29-30. The BCNR denied reconsideration on March 6, 2001. A.R. 24.

Plaintiff submitted his latest application to the BCNR on April 27, 2005. A.R. 33. He sought "consideration . . . to change the status of [his] discharge . . . through [the Navy's] amnesty program." A.R. 33. He stated that his "claim for non-service connected disability pension benefits" was denied. A.R. 33. Again, on June 15, 2005, the BCNR denied reconsideration. A.R. 31.

### C. Plaintiff's Demands for Relief

According to plaintiff, detailed military defense counsel coerced him into signing the plea agreement by assuring him that he would not be discharged, when he had know knowledge of his rights. Compl. at 3. Further, plaintiff alleges that the commanding officer of the Subic Bay Naval Station "unlawfully influenc[ed] the convening of the Special Court-Martial." *Id.* at 9.

For these and other alleged violations of his rights, plaintiff asks this Court to dismiss the charges against him, to vacate the Special Court Martial's judgment, to "assume" that he has served the past 28 years "as honorable active duty and presume all promotions as regular to the highest rank of an enlisted man," to award him monetary damages totaling $1,001,000,000, and to grant him United States citizenship. Compl. at 8.

## II. DISCUSSION

### A. Statute of Limitations

Defendant moves to dismiss two of plaintiff's claims – the collateral attack on his special court-martial conviction and the challenge to the BCNR's 1982 and 1997 decisions – on the ground that these claims are untimely. *See* Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment ("Def.'s Mot.") at 11-14.

"[E]very civil action against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401. This provision applies to "all civil actions whether legal, equitable or mixed," and "likewise applies to claims seeking to correct or upgrade the discharge of former service members." *Kendall v. Army Bd. for Corr. of Military Records*, 996 F.2d 362, 365 (D.C. Cir. 1993). In this context, the cause of action for upgrade of a military discharge accrues "at the time when he began to suffer an alleged disadvantage." *Walters v. Secretary of Defense*, 725 F.2d 107, 114 (D.C. Cir. 1983), *reh'g denied*, 737 F.2d 1038 (D.C. Cir. 1984) (en banc) (per curiam); *Kendall*, 996 F.2d at 365-66.

The record shows that plaintiff's cause of action arose on March 9, 1977, the effective date of his bad conduct discharge. On that date, "the statute of limitations began to run on any

4

action that he might have arising directly from the discharge, that is, on claims based on an allegedly invalid court-martial." *Kendall*, 996 F.2d at 365-66. The six-year statute of limitations has long since run. Any challenge to the special court-martial proceedings and his claim for upgrade of his discharge now are time-barred, as are plaintiff's challenges to the BNCR's 1982 and 1997 decisions.

### B.  Waiver

Even if plaintiff's claims were timely filed, defendant argues that his failure to raise claims with respect to detailed military counsel's assistance or to the special court-martial's jurisdiction are barred because he failed to raise them below in the military courts. Def.'s Mot. at 12-13.

Military courts are independent of the federal courts, and are "analogized [] to state court systems when individuals punished by court-martial seek redress in federal courts." *Kendall*, 966 F.2d at 366; *see Gusik v. Schilder*, 340 U.S. 128, 131 (1950) (making analogy between collateral attack on military judgment and collateral attack on state court judgment). For this reason, federal courts "apply identical waiver rules to bar claims raised for the first time during a collateral attack on a court-martial." *Kendall*, 966 F.2d at 366.

Review of the verbatim trial record shows that the presiding military judge offered plaintiff an opportunity to decline the defense counsel detailed to represent him, that plaintiff declined to hire civilian counsel of his choice, that he declined to exercise his right to obtain a military lawyer of his choice, and that he expressed no dissatisfaction with defense counsel's performance. C.M. 57-58, 72. Further, the record shows that plaintiff entered his guilty plea voluntarily, after having "received the full benefit" of counsel's advice and without coercion or inducement. C.M. 72-73. Nothing in the record shows that plaintiff raised a contemporaneous

objection to any matter made an issue in this case. His failure to raise issues pertaining to the quality of counsel's services or the propriety of counsel's actions, or any other alleged errors in the special court-martial proceedings in the military courts, then, bars their review by this Court. *See Kendall*, 996 F.2d at 366; *Martinez v. United States*, 914 F.2d 1486, 1488 (Fed. Cir. 1990) ("[a]bsent a showing of good cause and prejudice, an appellant's failure to raise his constitutional claims in the military court system bars him from raising them in federal court"); *Wolff v. United States*, 737 F.2d 877, 879-80 (10th Cir.), *cert. denied*, 469 U.S. 1076 (1984).

### B. Demands for Damages

In addition to correction of his military records, plaintiff demands compensatory and punitive damages totalling $1,001,000,000,000.[4] Compl. at 1-2, 10. Presumably the demand for damages stems from what appear to be tort claims: plaintiff allegedly suffers financial hardship, mental anguish, emotional stress, injury to his reputation, and ineligibility for veterans benefits as a result of the bad conduct discharge. *See id.* at 6-7 & Attach. (correspondence regarding denial of applications for veterans benefits).

### 1. Claim for Damages under the Federal Tort Claims Act

The Federal Tort Claims Act ("FTCA") grants federal district courts jurisdiction over claims arising from certain torts committed by federal employees in the scope of their employment. *See* 28 U.S.C. § 1346. In addition, the FTCA waives the sovereign immunity of the United States for tort liability only "under circumstances where the United States, if a private

---

[4] In addition, plaintiff asks this Court to award him United States citizenship. Compl. at 1-2, 8-9. This Court lacks jurisdiction to award such relief. "[T]he power to make someone a citizen of the United States has not been conferred upon the federal courts, like mandamus or injunction, as one of their generally applicable equitable powers." *Immigration and Naturalization Serv. v. Pangilinan*, 486 U.S. 875, 883-84 (1988); *see Tranter v. Sec'y of State*, No. 92-1565, 1994 WL 289358, *3 (D.D.C. May 17, 1994) (concluding that a "federal court does not possess the power to confer citizenship").

person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). However, the FTCA does not waive the United States' sovereign immunity for constitutional torts that may be committed by its employees. *Meyer v. Fed. Bureau of Prisons*, 929 F.Supp. 10, 13 (D.D.C. 1996); *Kline v. Republic of El Salvador,* 603 F.Supp. 1313, 1316-17 (D.D.C. 1985); *see* 28 U.S.C. § 2679(b)(1), (2).

Insofar as plaintiff demands damages from the United States on any tort claims, defendant argues that the claims are barred for his failure to exhaust his administrative remedies before filing this action. Def.'s Mot. at 17-19.

A plaintiff exhausts after he presents his claim to the appropriate federal agency and the agency denies the claim in writing. *See* 28 U.S.C. § 2675(a). If an agency fails to make a final disposition within six months after the filing of the claim, the plaintiff may file suit thereafter. *See id.* The FTCA bars a plaintiff from bringing a civil action in district court before he has exhausted his administrative remedies. *See McNeil v. United States*, 508 U.S. 106, 113 (1993). Nothing in the record suggests that plaintiff has presented his tort claims to defendant. Assuming without deciding that plaintiff adequately states a claim under the FTCA, he fails to establish that he has exhausted his administrative remedies on the claim prior to filing this civil action. Any claims under the FTCA, then, are barred.

2. Claims for Damages Exceeding $10,000 under the Tucker Act

Insofar as plaintiff seeks monetary damages unrelated to his tort claims in excess of $10,000, defendant argues that the United States Court of Federal Claims, not this federal district court, has exclusive jurisdiction. Def.'s Mot. at 20-21.

The Tucker Act vests in the Court of Federal Claims original jurisdiction over civil actions against the United States "founded either upon the Constitution, or any Act of Congress,

or any regulation of an executive department, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). Federal district courts, in comparison, have concurrent jurisdiction over civil actions of this nature, as long as the claim does not exceed $10,000 in amount. *See* 28 U.S.C. § 1346(a)(2) (known as the Little Tucker Act). "Absent other grounds for district court jurisdiction, a claim is subject to the Tucker Act and its jurisdictional consequences if, in whole or in part, it explicitly or 'in essence' seeks more than $10,000 in monetary relief from the federal government." *Kidwell v. Dep't of the Army, Bd. for Corr. of Military Records*, 56 F.3d 279, 284 (D.C. Cir. 1995).

Plaintiff's express demand for damages far exceeds the $10,000 limit. *See* Compl. at 8. It is unclear what dollar amount pertains to plaintiff's demand for back pay and benefits, however. The Court presumes that total pay and benefits attributable to a 28-year career in the United States Navy and an honorable discharge exceeds $10,000. Assuming without deciding that plaintiff adequately states a claim for damages in excess of $10,000, the claim must fail because this Court lacks of subject matter jurisdiction.

C.   The BCNR's Decisions

Even if plaintiff had filed his BCNR applications timely, he has not shown that the BCNR acted improperly in denying his requests for an upgrade of his bad conduct discharge.

The Secretary of the Navy "may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552 (a). The BCNR "consider[s] applications properly before it for the purpose of determining the existence of error or injustice in the naval records of current and former members of the Navy and Marine Corps, [and] to make recommendations to the Secretary or to take corrective action on the Secretary's behalf when authorized." 32 C.F.R. § 723.2(b). The

BCNR "may deny an application in executive session if it determines that the evidence of record fails to demonstrate the existence of probable material error or injustice." 32 C.F.R. § 723.3(e)(2). It is presumed that public officers properly discharge their duties, and applicants bear the burden of overcoming this presumption. *Id.*

"After final adjudication, further consideration will be granted only upon presentation by the applicant of new and material evidence or other matter not previously considered by the [BCNR]." 32 C.F.R. § 723.9. The BCNR's Executive Director screens applications for reconsideration, and forwards to the BCNR only those cases where "new and material evidence or other matter (including, but not limited to, any factual allegations or arguments why the relief should be granted) has been submitted by the applicant." *Id.* New evidence means "evidence not previously considered by the Board and not reasonably available to the applicant at the time of the previous application." Evidence is material if it is " likely to have a substantial effect on the outcome." *Id.*

Federal courts may review the decisions of boards for correction of military records under the Administrative Procedure Act ("APA"), *see* 5 U.S.C. § 701 *et seq. Piersall v. Winter*, 435 F.3d 319, 325 (D.C. Cir. 2006). "Board decisions . . . can be set aside if they are arbitrary, capricious or not based on substantial evidence." *Chappell v. Wallace*, 462 U.S. 296, 303 (1983); *see Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000); *Kreis v. Secretary of the Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989) ("decisions of the [Air Force] Board [for Correction of Military Records] are reviewable under the APA, albeit by an unusually deferential application of the 'arbitrary or capricious' standard").

The Court has reviewed the Administrative Record, the verbatim transcript of plaintiff's special court-martial, and all of plaintiff's filings in this civil action. Plaintiff has not produced

evidence sufficient to persuade this Court to depart from the deference accorded to decisions of boards for correction of military records. Nor has plaintiff presented an argument or evidence to persuade the Court that the BCNR improperly declined to reconsider plaintiff's case upon review of his 1997, 2001 and 2005 applications.

The presiding military judge took pains to establish that plaintiff was satisfied with detailed military defense counsel, that plaintiff understood the charge and specification against him, and that his guilty plea was voluntary. Prior to the 2001 application, nowhere in the record is there a challenge to the quality of defense counsel or a challenge to the special court-martial's jurisdiction. Although plaintiff presented new information in the 1997, 2001, and 2005 applications for reconsideration, none of that information would change the outcome.

### III.  CONCLUSION

The statute of limitations bars plaintiff's collateral attack on the special court-martial conviction and his claim for an upgrade of his discharge. His failure to raise objections in the military courts pertaining to detailed military counsel's performance and other matters pertaining to the special court-martial bars review of such matters in federal court. The BCNR found, and the Court concurs, that correction of plaintiff's military records is not warranted in this case. Accordingly, defendants' motion for summary judgment will be granted. An Order consistent with this Memorandum Opinion will be issued separately on this same date.

Signed:     EMMET G. SULLIVAN
            United States District Judge

Dated:      March 20, 2007